**LOCAL 261, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al., Plaintiffs,**

v.

**ASTON CONSTRUCTION CO., Defendant.**

Civ. No. 83–1597.

United States District Court, M.D. Pennsylvania.

Jan. 25, 1984.

Robert D. Mariani, Mariani & Greco, Scranton, Pa., for plaintiffs.

Sheldon Rosenberg, Nancy Abrams, Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

The plaintiffs in the above-captioned matter filed their complaint on November 3, 1983, invoking the jurisdiction of this court pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) and sections 1132 and 1145 of ERISA, 29 U.S.C. § 1001 *et seq.* Essentially, the plaintiffs allege that the defendant has failed to perform certain duties, including the obligation to make payments to certain employee funds, as required by a collective bargaining agreement. The defendant has moved to stay the present action pending arbitration of the dispute. For the reasons set forth below, the court will deny the motion.

## DISCUSSION

To support its view that a stay is appropriate in this case, the defendant cites the "no-strike clause" in the parties' collective bargaining agreement. That provision states:

> There shall be no strikes, work stoppages, or picketing unless a party has failed to pay the minimum wage rates prescribed by the Agreement or a party has failed to make payments as required by this Agreement when due to the appropriate funds.

*See* Brief in Support of Motion to Stay Pending Arbitration at 2, Document 7 of the Record. Although conceding that the contract does not contain an arbitration clause, the defendant asserts that the court should find that an "implied" duty to arbitrate arises from the inclusion of the no-strike clause in the collective bargaining agreement.

The defendant supports this argument by noting that the courts sometimes have "implied" an obligation not to strike by looking to the inclusion of an arbitration clause in a labor contract. The defendant concedes, however, that "a thorough search of federal and labor digests has failed to produce any cases which [hold that] a duty to arbitrate can be implied from an express no-strike clause." *Id.* at 3–4.

The court rejects the defendant's argument. While an arbitration clause nor-

mally is considered the *quid pro quo* for a no-strike clause, *see Textile Workers of America v. Lincoln Mills,* 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), there is no principle in federal labor law which would preclude the parties from electing to include only one of these provisions in a collective bargaining agreement. Moreover, those cases which "imply" a no-strike clause, *see, e.g., Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.,* 369 U.S. 95, 104–06, 82 S.Ct. 571, 577–78, 7 L.Ed.2d 593 (1962), do not support the defendant's position that the inclusion of a no-strike clause gives rise to an implicit obligation to arbitrate. In the *Lucas Flour* case, the Supreme Court stated:

> Whether, as a matter of federal law, the strike which the union called was a violation of the collective bargaining contract is thus the ultimate issue which this case presents. It is argued that there could be no violation in the absence of a no-strike clause in the contract explicitly covering the subject of the dispute over which the strike was called. We disagree.
>
> The collective bargaining contract expressly imposed upon both parties the duty of submitting the dispute in question to final and binding arbitration. In a consistent course of decisions the Courts of Appeals of at least five Federal Circuits have held that a strike to settle a dispute which a collective bargaining agreement provides shall be settled exclusively and finally by compulsory arbitration constitutes a violation of the agreement. The National Labor Relations Board has reached the same conclusion. We approve that doctrine. To hold otherwise would obviously do violence to accepted principles of traditional contract law. Even more in point, a contrary view would be completely at odds with the basic policy of national labor legislation to promote the arbitral process as a substitute for economic warfare.

*Id.* at 104–05, 82 S.Ct. at 577–78 (footnotes and citations omitted). Hence, the *Lucas Flour* decision was grounded upon the belief that a promise to use arbitration as the *exclusive means* to resolve a dispute necessarily negates the right to resort to a strike to achieve the same end.

▪ The *Lucas Flour* holding makes a great deal of sense. It is difficult, however, to extend it to a situation in which the facts are reversed, for a promise not to strike does not necessarily negate the right to resort to judicial or any other remedies which may be available in the event of a dispute. Inasmuch as the court can find no implied promise to arbitrate here, and since "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), the court must deny the instant motion.

▪ In addition, even if the court were to apply *Lucas Flour* to these facts, the defendant would be in no better position regarding a stay. The *Lucas Flour* Court limited its holding by stating that "[w]hat has been said is not to suggest that a no-strike agreement is to be implied beyond the area which it has been agreed will be exclusively covered by compulsory ... arbitration." 369 U.S. at 106, 82 S.Ct. at 578. In the instant case, the no-strike clause has a limited scope, for it does not apply if "a party has failed to make payments" required by the contract. The present dispute concerns such a failure to remit the requisite sums. If the court were to hold that an agreement to arbitrate is implicit in the contract then, it could not apply to the instant dispute which lies beyond the area falling within the scope of the no-strike clause.

An appropriate Order will enter.